**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **PHILADELPHIA INDEMNITY** | * |
| **INSURANCE COMPANY** | |
| P.O. Box 950 | * |
| One Bala Plaza, Suite 100 | |
| Bala Cynwyd, PA 19004 | * |
| | |
| | **Civil Action No.:   22-cv-00005** |
| and | * |
| | |
| **KIDDIE ACADEMY DOMESTIC** | * |
| **FRANCHISING, LLC** | |
| 3415 Box Hill Corporate Center Drive | * |
| Abingdon, MD 21009 | |
| | * |
| **Plaintiffs** | |
| | * |
| v. | |
| | * |
| **MARKEL INSURANCE COMPANY** | |
| 4521 Highwoods Parkway | * |
| Glen Allen, VA 23060 | |
| | * |
| Serve: | |
| | * |
| Maryland Insurance Administration | |
| 200 St. Paul Place, Suite 2700 | * |
| Baltimore, MD  21202 | |
| | * |
| and | |
| | *                                              * |
| **BULLOCK'S BRIGHT BEGINNINGS, LLC** | |
| 2108 Bayou Cove Lane | * |
| League City, TX 77573 | |
| | * |
| Serve: | |
| Cory Bullock, Resident Agent | * |
| 2108 Bayou Cove Lane | |
| League City, TX 77573 | * |
| | |
| and | * |

**CORY BULLOCK**
2108 Bayou Cove Lane
League City, TX 77573                         *

and                                           *

**SUMMER BULLOCK**                            *
2108 Bayou Cove Lane
League City, TX 77573                         *

    **Defendants**        *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## COMPLAINT FOR BREACH OF CONTRACT
## AND DECLARATORY JUDGMENT

Pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiffs Philadelphia Indemnity Insurance Company ("PIIC") and Kiddie Academy Domestic Franchising, LLC ("KADF") (collectively referred to as "Plaintiffs") bring this suit for Declaratory Judgment against Defendants Markel Insurance Company, Bullock's Bright Beginnings, LLC, Cory Bullock, and Summer Bullock and state as follows:

### PARTIES

1.      Philadelphia Indemnity Insurance Company ("PIIC") is an insurance company organized and existing in the Commonwealth of Pennsylvania.

2.      Kiddie Academy Domestic Franchising, LLC ("KADF") is a Delaware limited liability company with its principal place of business in the State of Maryland.

3.      Markel Insurance Company ("Markel") is an insurance company organized and existing in the Commonwealth of Virginia.

2

4.     Bullocks Bright Beginnings, LLC ("Bullocks") is a limited liability company organized and existing in the State of Texas.

5.     Cory Bullock ("Mr. Bullock") is an individual resident of the State of Texas.

6.     Summer Bullock ("Ms. Bullock") is an individual resident of the State of Texas.

## JURISDICTION AND VENUE

7.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction because the amount in controversy exceeds $75,000 and the parties have complete diversity of citizenship.

8.     Pursuant to 28 U.S.C. § 2201, the matter in controversy involves a declaration of the rights, duties, and obligations of the parties under insurance policies and other contracts.

9.     This Court is the proper venue for this dispute pursuant to Paragraph 27.2 of the Franchise Agreement between KADF and Bullocks/Mr. Bullock/Ms. Bullock which state, "The parties agree that any cause of action by either party against the other must be filed in the United States District Court for the District of Maryland or the Circuit Court for Harford County, State of Maryland, and the parties and all personal guarantors hereof do hereby waive all questions of personal and subject matter jurisdiction or venue for the purpose of carrying out this provision…."

## FACTS REGARDING PRIOR LITIGATION

10.     On or about March 12, 2007, KADF and Mr. and Ms. Bullock entered into a Franchise Agreement under which KADF granted Mr. and Ms. Bullock the right to operate a Kiddie Academy Child Care Learning Center in League City, Texas.

11.     Paragraph 14 of the Franchise Agreement required Mr. and Ms. Bullock to procure:

3

14.2(a) Comprehensive general liability insurance, including personal injury, errors and omissions, products/completed operations, contractual liability, teachers professional liability, sexual abuse and molestation and products liability, as well as comprehensive automobile liability coverage for both owned and non-owned vehicles, and property damage liability coverage, in the amount of Two Million Dollars ($2,000,000) per occurrence and Three Million Dollars ($3,000,000) in the aggregate.

12.      Paragraph 20.3 of the Franchise Agreement provides:

**Indemnification**

It is understood that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty or representation on Franchisor's behalf, or to incur any debt or other obligation in Franchisor's name. Franchisor will in no event assume liability for, or be deemed liable under this Agreement as a result of any such action; nor will Franchisor be liable by reason of any act or omission of Franchisee in its conduct in operating the Franchised Business or for any claim or judgment arising from the operation of the Franchised Business against Franchisee or Franchisor. Franchisee will indemnify and hold Franchisor and Franchisor's members, managers, officers, directors and employees harmless against any and all claims arising directly or indirectly from, as a result of, or in connection with Franchisee's operation of the Franchised Business, as well as the costs, including attorneys' fees, of defending against them. This provision and all of its parts shall survive the termination or expiration of this Agreement.

13.      On or about September 20, 2019, Jared and Lindsey McNeel, Individually and as Natural Representatives of the Estate of S.M.M., filed a Second Amended Complaint in the U.S. District Court for the Southern District of Texas against Kiddie Academy Domestic Franchising, LLC, styled *Jared McNeel, et al. v. Kiddie Academy International, Inc., et al.*, Case No. 19-cv-178 (the "Underlying McNeel Federal Litigation").

14.      The McNeel Plaintiffs had filed an earlier lawsuit in the District Court of Galveston County, Texas against Kiddie Academy International, Inc., Bullocks Bright Beginnings, LLC,

Cory Bullock and Summer Bullock, d/b/a Kiddie Academy of League City, styled *Jared McNeel, et al. v. Kiddie Academy International, Inc., et al.*, Case No. 18-CV-1455 (the "Underlying McNeel State Litigation").

15.     Both the Underlying McNeel State Litigation and the Underlying McNeel Federal Litigation arose out of an incident which occurred on August 27, 2018, in which the McNeels' infant child, S.M.M., died while in the care of Bullocks Bright Beginnings, LLC (the "Incident").

<u>**THE MARKEL POLICIES**</u>

16.     At the time of the Incident, Markel issued a Commercial General Liability Policy of insurance to Bullocks, Policy No. CCG20015989-05, with effective dates of July 21, 2018 to July 21, 2019, and with limits of liability of $1,000,000 in general liability coverage and $1,000,000 in professional liability coverage (the "Markel CGL Policy").

17.     The Markel CGL Policy provides in relevant part as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

\*          \*          \*

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.  Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. …

\*     \*     \*

### TEXAS PROFESSIONAL LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following changes apply only to the coverage provided by this endorsement.

**A.**  The following is added to Section I – Coverages:

### MISCELLANEOUS PROFESSIONAL LIABILITY

**1.  Insuring Agreement**

**a.**  We will pay those sums that the insured becomes legally obligated to pay as "damages" because of injury arising out of a "wrongful act" of the insured or of any other person for whose acts the insured is legally liable, to which this insurance applies. …

**b.**  This insurance applies to injury only if:

**(1)**  The injury is caused by a "wrongful act" that takes place in the "coverage territory";

**(2)**  The injury occurs during the policy period; and

**(3)**  Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or received notice of a "wrongful act" or claim, knew that the injury had occurred, in whole or in part. …

\*     \*     \*

**C.  Section II  Who Is An Insured** is amended as follows:

**3.**   Your franchisor is added as an additional insured, but only with respect to their liability as a grantor of a franchisor to you. However:

a. No coverage will be provided if, in the absence of this endorsement, no liability will be imposed by law on you. Coverage will be limited to the extent of your negligence or fault according to the applicable principals of comparative fault;
b. The insurance afforded to such additional insured only applies to the extent permitted by law; and
c. If coverage provided to the additional insured is required by contract or agreement:
(1) The insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured; and
(2) The most we will pay on behalf of the additional insured is the amount of insurance required by the contract or agreement or available under Miscellaneous Professional Liability coverage, whichever is less.
This will not increase the applicable limits of insurance described in Paragraph D. below.

*        *        *


**D.**  Section III – Limits of Insurance is replaced by the following:

**LIMITS OF INSURANCE**
**4.**   The limits of insurance provided by this endorsement are in addition to the limits of insurance provided by the Commercial General Liability Coverage Form.

*        *        *

**F.**  The following are added to the Definitions section:

"Wrongful act" means any actual or alleged negligent act, error or omission in the rendering or failure to render professional services to others out of your operations, including the

furnishing of food, beverages, medications or appliances in connection with those operations.

18.     KADF is an Additional Insured under the Markel Policy.

## THE PIIC POLICIES

19.     At the time of the Incident, PIIC issued a Commercial General Liability Policy of insurance to KADF, Policy No. PHPK1757163, with effective dates of December 31, 2017 to December 31, 2018, and with limits of liability of $1,000,000 (the "PIIC CGL Policy").

20.     At the time of the Incident, PIIC issued also a Commercial Umbrella Liability Policy of insurance to KADF, Policy No. PHUB612780, with effective dates of December 31, 2017 to December 31, 2018, and with limits of liability of $10,000,000 (the "PIIC Umbrella Policy").

## SETTLEMENT OF THE UNDERLYING McNEEL FEDERAL LITIGATION

21.     On January 17, 2020, mediation was held in the Underlying McNeel Federal Litigation. KADF and PIIC requested that Bullocks, Mr. and Ms. Bullock, and Markel attend the mediation and contribute to settlement of the claims in accordance with the terms of the Franchise Agreement and the Markel Policy.

22.     Bullocks, Mr. and Ms. Bullock, and Markel all refused to participate in the January 17, 2020 mediation.

23.     On March 10, 2021, the Court in the Underlying McNeel Federal Litigation entered an Order denying KADF's Motion for Summary Judgment, in which it had asserted that it was not vicariously liable for the negligence of Bullocks, Mr. Bullock, and Ms. Bullock for the Incident.

24.     On May 22, 2021, mediation was held in the Underlying McNeel Federal Litigation. KADF and PIIC requested that Bullocks, Mr. and Ms. Bullock, and Markel attend the

mediation and contribute to settlement of the claims in accordance with the terms of the Franchise

Agreement and the Markel Policy.

25.     Markel attended the May 22, 2021 mediation but refused to make any meaningful

contribution toward settlement of the Underlying McNeel Federal Litigation.

26.     Markel has asserted that it exhausted its Policy limits when it settled the

Underlying McNeel State Litigation with a contribution of $1,000,000 in general liability coverage

from the Markel CGL Policy.

27.     On August 9, 2021, PIIC and KADF reached a settlement of the Underlying

McNeel Federal Litigation with a payment of $4,000,000, representing the $1,000,000 PIIC primary

policy limits and $3,000,000 from the PIIC umbrella policy limits.

28.     Markel did not contribute any of the limits of the professional liability coverage

from the Markel CGL Policy to settle the Underlying McNeel Federal Litigation.

29.     A dispute has arisen regarding the amounts the insurers were obligated to

contribute to the settlement of the Underlying McNeel Federal Litigation.

30.     Plaintiffs contend that Markel failed to exhaust its policy limits under the Markel

CGL Policy, which was primary to all other policies.

31.     Specifically, Plaintiffs contend that Markel was required to contribute both

$1,000,000 in professional liability coverage and $1,000,000 in general liability coverage from the

Markel CGL Policy.

32.     The Markel CGL Policy provides "The limits of insurance provided by this [Texas

Professional Liability Coverage] endorsement are in addition to the limits of insurance provided

by the Commercial General Liability Coverage Form." *See* TEXAS PROFESSIONAL LIABILITY

COVERAGE ENDORSEMENT, D. Limits of Insurance, 4.

33.     Markel disputes that it is obligated under the Markel CGL Policy to contribute

$1,000,000 in professional liability coverage toward the settlement of the Underlying McNeel

Federal Litigation.

34.     Plaintiffs assert that Bullocks engaged in Wrongful Acts, as found by the Texas

Health and Human Services, Child-Care Licensing Division, and as defined and covered by the

Texas Professional Liability Coverage endorsement, as follows:

> a.     in a failure of design of the infant sleeping room, the space did not allow
> supervision to be maintained at all times when infants were sleeping;
> b.     the facility did not make provisions for pre-service and ongoing training for new
> infant caregivers and those caregivers were not trained by a qualified trainer or the
> director of the daycare;
> c.     the caregivers were further not evaluated or assessed after completing self-
> instructional training;
> d.     Bullocks failed to have a designated director fulfilling responsibilities to meet the
> minimum standards of the law;
> e.     the director did not operate the center within compliance of the minimum
> standards because the director did not ensure that the training of the infant caregivers
> was completed, the director did not address violations related to unsafe infant sleep and
> failed to appropriately assess the sleep practices used by the caregivers;
> f.     the self-study training used for caregivers does not provide the caregivers with
> required amounts or substance of the annual training requirements;
> g.     the director did not confirm that all exceptions to the infant sleep policy were
> documented by medical certification from a healthcare provider; and
> h.     the director was never provided with the training necessary and required to
> effectively perform her obligations as the director, including training on the infant safe
> sleep policy or the training necessary to be able to effectively and appropriately train the
> caregivers.

35.     All of these deficiencies cited above are failures of the professional responsibilities

of the operation of the childcare center. They are failures in implementation of policies and

practices that were necessary to meet the minimum standards of the law and the standard of care. They are expressly failures of the professional training, education, and expertise required to operate a commercial day care center.

36.     Bullocks has a contractual and common law obligation to indemnify KADF for these breaches of professional responsibilities and wrongful acts that arose directly or indirectly from, as a result of, or in connection with Bullocks' operation of the Franchised Business.

37.     Bullocks, and Mr. and Ms. Bullock, have breached their contractual obligation to indemnify KADF for the Incident and have breached their contractual obligation to KADF to provide $2,000,000 in primary general liability and professional liability coverage to resolve the Underlying McNeel Federal Litigation.

38.     There exists an actual, justiciable controversy as to whether Markel is obligated under the Markel CGL Policy to contribute $1,000,000 in professional liability coverage towards the settlement of the Underlying McNeel Federal Litigation, either in compliance with its obligations to KADF as an Additional insured or to Bullocks for its contractual and common law duties to KADF.

**COUNT I**
**KADF vs. Bullocks, Cory Bullock, Summer Bullock –**
**Contractual Indemnification**

39.     Plaintiffs specifically incorporate all of the above allegations as if set forth fully herein.

40.     Paragraph 20.3 of the Franchise Agreement provides "Franchisee will indemnify and hold Franchisor and Franchisor's members, managers, officers, directors and employees harmless against any and all claims arising directly or indirectly from, as a result of, or in

11

connection with Franchisee's operation of the Franchised Business, as well as the costs, including attorneys' fees, of defending against them."

41.     KADF has incurred $4,000,000 in cost to settle the Underlying McNeel Federal Litigation, in addition to fees and costs in defense of that case.

42.     Pursuant to the Franchise Agreement, KADF is entitled to indemnification from Bullocks and Mr. and Ms. Bullock (pursuant to their personal guaranty obligations regarding the Franchise Agreement) for the amount expended to settle, plus the costs incurred in defense of the Underlying McNeel Federal Litigation.

43.     Bullocks and Mr. and Ms. Bullock have breached their obligation of contractual indemnification and/or for personal guaranties by not fully indemnifying Essential and KADF for the amounts incurred in the Underlying McNeel Federal Litigation.

WHEREFORE, Plaintiff Kiddie Academy Domestic Franchising, LLC requests this Honorable Court enter judgment in their favor and against Defendants Bullocks and Mr. and Ms. Bullock in an amount to be proven by evidence together with pre and post judgment interest, costs and such other relief as this Court deems appropriate.

## COUNT II
### PIIC v. Bullocks, Cory Bullock, Summer Bullock – Equitable Subrogation

44.     Plaintiffs specifically incorporate all of the above allegations as if set forth fully herein.

45.     Bullocks and Mr. and Ms. Bullock, as the owner and operator of a childcare facility charged with the responsibility of the well-being of children such as the Minor, S.M.M., was under a duty to exercise a high degree of care for the safety and welfare of children in its facility.

46.     Bullocks and Mr. and Ms. Bullock breached that duty of care when they engaged in Wrongful Acts that resulted in the Incident on August 27, 2018, when the S.M.M. suffered personal injury and death at Bullocks' childcare facility.

47.     As a result of Bullocks' professional negligence, PIIC has made payment on behalf of its insured, KADF, for indemnification/settlement, plus costs and attorneys' fees in defense of the Underlying McNeel Federal Litigation in accordance with the terms and conditions of the PIIC Policies.

48.     By virtue of the payment made on behalf of its insured, and in accordance with the terms and conditions of the PIIC Policy, PIIC is legally, equitably, and contractually subrogated to the rights of its insured to the extent of such payment.

WHEREFORE, Plaintiff Philadelphia Indemnity Insurance Company requests this Honorable Court enter judgment in its favor and against Defendants Bullocks and Mr. and Ms. Bullock in an amount to be proven by evidence together with pre and post judgment interest, costs and such other relief as this Court deems appropriate.

## COUNT III
### Declaratory Judgment - Markel is obligated under the Markel CGL Policies to contribute $1,000,000 in professional liability coverage towards the settlement of the Underlying McNeel Federal Litigation and in indemnification of its insureds, KADF and Bullocks.

49.     Plaintiffs specifically incorporate all of the above allegations as if set forth fully herein.

50.     The Markel CGL Policies provide: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *See* COMMERCIAL GENERAL LIABILITY COVERAGE FORM,

SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement.

51.     The Markel CGL Policy provides: "If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows: a. Primary Insurance. This insurance is primary except when Paragraph b. below applies."  *See* COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance, a. Primary Insurance.

52.     None of the conditions of Paragraph b. applies to change the status of the Markel CGL Policies as primary.

53.     The Markel CGL Policy provides: "The limits of insurance provided by this [Texas Professional Liability Coverage] endorsement are in addition to the limits of insurance provided by the Commercial General Liability Coverage Form."  *See* TEXAS PROFESSIONAL LIABILITY COVERAGE ENDORSEMENT, D. Limits of Insurance, 4.

54.     The Markel Policy requires that both the professional liability coverage limits and the commercial general liability coverage limits should have been paid in settlement of the Underlying McNeel Federal Litigation.

WHEREFORE, Plaintiffs Philadelphia Indemnity Insurance Company and Kiddie Academy Domestic Franchising, LLC request this Honorable Court enter judgment in their favor and against Defendants Markel Insurance Company, Bullock's Bright Beginnings, LLC, Cory Bullock, and Summer Bullock and declare the following:

a)      That both the professional liability coverage and general liability coverage limits of the Markel CGL Policy must be paid in settlement of the Underlying McNeel Federal Litigation;

b)      That Markel is obligated to contribute $1,000,000 from the Markel CGL Policy toward the settlement of the Underlying McNeel Federal Litigation;

c)      That Markel shall, for the Underlying McNeel Federal Litigation, pay $1,000,000 to PIIC representing the professional liability coverage limits of the Markel CGL Policy;

d)      That Markel has a contractual obligation to indemnify Bullock's Bright Beginnings, LLC, Cory Bullock, and Summer Bullock for their breach of their contractual obligations to defend and indemnify KADF, and/or to provide personal guaranty of fulfillment of such obligations,  with regard to the Underlying McNeel Federal Litigation;

e)      Such other and further relief as the Court deems appropriate.


/s/ Margaret Fonshell Ward
Margaret Fonshell Ward (04586)
DOWNS WARD BENDER HAUPTMANN & HERZOG, P.A.
Executive Plaza III, Suite 400
11350 McCormick Road
Hunt Valley, Maryland 21031
Phone:  410-584-2800
Fax:  410-584-2020
mward@downs-ward.com
*Attorneys for Plaintiffs*
*Philadelphia Indemnity Insurance Company and*
*Kiddie Academy Domestic Franchising, LLC*