UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

PHILADELPHIA INDEMNITY INS. CO., *et al.*

    *Plaintiffs,*

    v.                                            Civil No. JRR-22-00005

MARKEL INS. CO., *et al.,*

    *Defendants.*

## MEMORANDUM OPINION

This matter comes before the court on Defendant Markel Insurance Company's ("MIC") Motion to Dismiss Count III of Plaintiffs' Complaint for Breach of Contract and Declaratory Judgment or, Alternatively, Dismiss or Stay as Premature (ECF 7; the "Motion"). The court has considered all papers submitted. No hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons set forth herein, the Motion will be granted by accompanying order; Count III will be dismissed without prejudice to Plaintiffs' entitlement to reassert the claim once issues of related liability are resolved.

## I.      BACKGROUND

In 2007, Defendants Mr. and Mrs. Bullock entered a franchise agreement with Kiddie Academy Domestic Franchising, LLC ("KADF") to operate a Kiddie Academy childcare facility in Texas. In 2008, Jared and Lindsey McNeel's infant daughter died while in the care of the childcare facility (the "Incident"). The McNeels sued Kiddie Academy International, Inc., Bullocks Bright Beginnings, LLC, and Defendants Mr. and Mrs. Bullock in Texas state court to recover damages associated with the death of their infant daughter; KADF was later added as a defendant and removed the case to the United States District Court for the Southern District of

Texas.  At the time of the Incident, the Bullocks were covered by MIC policy CCG20015989-05 and KADF was covered by Plaintiff Philadelphia Indemnity Insurance Company's ("PIIC") policy PHPK1757163.

MIC settled the McNeel lawsuit on behalf of the Bullocks by paying the $1 Million general liability limits of the MIC policy.  Later, PIIC settled the suit as against KADF for $4 Million ($1 Million in primary coverage; $3 Million in umbrella coverage).  Plaintiffs instituted the instant action to resolve a dispute as to whether MIC has a duty to contribute what Plaintiffs allege is $1 Million in professional liability coverage under the MIC policy toward the $4 Million PIIC paid in settlement on behalf of KADF.  In short, MIC asserts its policy does not stack general and professional liability coverage and Plaintiffs contend it does.  If MIC is right, the $1 Million it paid to settle the McNeel suit exhausted the policy.  If Plaintiffs are right, the MIC policy provided another $1 Million in professional liability coverage.  Plaintiffs argue that MIC is obligated to contribute $1 Million in professional liability coverage toward the amounts paid under the PIIC policy to settle the McNeel suit against KADF.

In Count I of the Complaint (ECF 1), KADF sues the Bullocks for indemnification of the $4 Million it paid to settle the McNeel suit.  In Count II, PIIC sues the Bullocks on grounds of subrogation to the rights of KADF to the extent of the $4 Million settlement.  In Count III, Plaintiffs ask this court for a declaratory judgment that MIC is obligated to contribute $1 Million towards the $4 Million settlement (and in indemnification of its insureds).

MIC seeks dismissal of Count III on the basis that it is premature.  Plaintiffs oppose the Motion essentially on grounds of judicial economy and efficiency.  The parties also spend a good deal of time and attention in their motions papers setting forth their respective positions as to the meaning of the MIC policy (*i.e.*, whether the general liability and professional liability coverages provided

under the MIC policy are stacked or not).  The court need not consider at this time the meaning of the contract and will not do so.

## II.      LAW AND ANALYSIS

The Declaratory Judgment Act (the "Act") affords district courts the ability to declare the rights and obligations of parties where doing so will help the parties by resolving an "actual controversy" then in existence.  28 U.S.C. § 2201(a).  For a court to exercise jurisdiction under the Act, a "case or controversy" must exist within the meaning of Article III of the United States Constitution (the "constitutional inquiry") and the court must be "satisfied" that doing so is sensible (the "prudential inquiry").  *White v. Nat'l Union Fire Ins. Co.,* 913 F.2d 165, 167-68 (4th Cir. 1990) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41 (1937) ("It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.")).  As an enabling statute, the Act confers wide latitude and discretion upon the court in determining "whether to assert jurisdiction over declaratory judgment actions."  *United Capitol Inc. Co. v. Kapiloff,* 155 F.3d 488, 493 (4th Cir. 1998).

The court finds that Count III is premature.  Until and unless a court declares the Bullocks liable to indemnify KADF (and the related issue of PIIC's subrogation to the rights of its insured), Count III puts the court in the position of issuing an advisory opinion.  "As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions."  *United Public Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947).

## III.     CONCLUSION

For the reasons set forth herein, the court will grant the Motion.


                                                   _____/s/_____
                                                   Julie R. Rubin
                                                   United States District Judge